# United States Court of Appeals
## For the First Circuit

No. 15-1507

DUAMEL SANTIAGO-RAMOS, individually and as representative
of the Conjugal Partnership; MARINÉS RIVERA-FIGUEROA;
CARIBBEAN ECONOMIC COUNCIL,

Plaintiffs, Appellants,

v.

AUTORIDAD DE ENERGÍA ELÉCTRICA DE PUERTO RICO,
AEE, a/k/a Puerto Rico Power Company,

Defendant, Appellee,

MARIMAR PÉREZ-RIERA,

Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Jay A. García-Gregory, U.S. District Judge]

Before
Howard, Chief Judge,
Torruella and Lynch, Circuit Judges.

Eric Quetglas-Jordán, with whom Quetglas Law Offices, Ricardo Izurieta, Luis Rafael Rivera, Luis Rafael Rivera Law Offices, and Allan Amir Rivera-Fernández, were on brief, for appellants.
Fernando J. Fornaris-Fernández, with whom Victoria D. Pierce-King and Cancio, Nadal, Rivera & Díaz, P.S.C., were on brief, for appellee.

August 24, 2016

**TORRUELLA**, **Circuit Judge**. Plaintiffs-Appellants Duamel Santiago-Ramos ("Santiago"), Marinés Rivera-Figueroa, and Caribbean Economic Council filed a class action suit on behalf of approximately 1.5 million Puerto Rican residents who are customers of Autoridad de Energía Eléctrica de Puerto Rico ("PREPA") against Defendant-Appellee PREPA alleging that PREPA's use of a portion of its overall revenue to subsidize municipalities' energy use violates the Takings Clause and deprives Plaintiffs-Appellants of their property interest in electricity and/or the funds they paid for electricity in violation of procedural due process. The district court granted summary judgment for PREPA. We affirm, finding Plaintiffs-Appellants lack standing.

## I.  The Basics

"We describe the facts, drawing all inferences in the plaintiff's favor, as we must do in summary judgment." Chaloult v. Interstate Brands Corp., 540 F.3d 64, 66 (1st Cir. 2008).

PREPA charges consumers a base rate of five cents per kilowatt-hour ("kwh"). In addition to the base rate, PREPA charges customers an adjustment fee each month, which has two components: (1) a fuel purchase charge based on the estimated price of fuel that is recalculated monthly and (2) an energy purchase charge. PREPA's Regulation of General Terms and Conditions for the Supply of Electric Energy ("PREPA Regulations") term electricity a

"movable good" that can be illegally appropriated.  P.R. Reg. AEE Reg. 7982.  Puerto Rico law defines movable property as things that can be appropriated.  31 L.P.R.A § 1061.

Puerto Rico law requires that PREPA use eleven percent of its overall revenue to fund, inter alia, subsidies and credits to select beneficiaries[1] -- for example, churches or social welfare organizations -- and a Contribution in Lieu of Taxes ("CILT") to municipalities to subsidize their energy use in exchange for exempting PREPA from taxes.  22 L.P.R.A. § 212(b).  As of 2011, following an amendment to 22 L.P.R.A. § 212(b), Law 233, the CILT calculation effectively excludes consumption billed to municipal facilities housing for-profit establishments.  P.R. Laws No. 233-2011.  A 2014 amendment to 22 L.P.R.A. § 212(b), Law 57, maintained that exclusion.[2]  P.R. Laws No. 57-2014.

## II.  **The Claims**

Plaintiffs-Appellants allege PREPA has subsidized municipalities' private use by $360 million since 2005 and $140 million since 2011, despite Law 233 and Law 57.  They also claim

---

[1]  According to Plaintiffs-Appellants, about thirty-three percent of PREPA consumers benefit from subsidies or grants.

[2]  This amendment changed the basis for calculating the eleven percent from PREPA's "net income" to "gross revenues."  It further outlined a complex energy use reduction scheme and mandated that PREPA create a stabilization fund with a portion of the CILT.  P.R. Laws No. 57-2014.

no procedure exists for resolving disputes regarding the taking of electricity. Plaintiffs-Appellants are seeking "just compensation" in the amount of $360 million. A magistrate judge recommended granting PREPA's motion for summary judgment and dismissing Plaintiffs-Appellants' claims with prejudice, finding that they had not identified a valid property interest, no taking had occurred, and no valid procedural due process claim existed in light of the absence of a property interest. The district court adopted the magistrate judge's recommendation and granted summary judgment for PREPA. Plaintiffs-Appellants appeal the grant of summary judgment.

On appeal, Plaintiffs-Appellants argue (1) they identified a valid property interest in both electricity as movable property and the monies paid for electricity; (2) PREPA effects an unconstitutional taking of that property by taking "the electric energy paid by [Plaintiffs-Appellants] to give it to the Municipalities" for private use without any rational purpose; (3) the "11% [Appellants] are charged by PREPA . . . to purchase electric power" is arbitrary and irrational; and (4) Appellants have been denied procedural due process.

### III.  A Standing Problem

This Court "review[s] a grant or denial of summary judgment, as well as pure issues of law, de novo." Sun Capital

-4-

Partners III, LP v. New Eng. Teamsters & Trucking Indus. Pension Fund, 724 F.3d 129, 138 (1st Cir. 2013). Here, our de novo review yields the definite conclusion that Plaintiffs-Appellants lack standing to bring suit.

"To satisfy the 'irreducible constitutional minimum of standing,' Plaintiffs must show (1) that they have suffered an injury in fact, (2) that the injury is fairly traceable to the [defendant]'s allegedly unlawful actions, and (3) that 'it [is] likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" Nulankeyutmonen Nkihtaqmikon v. Impson, 503 F.3d 18, 26 (1st Cir. 2007) (alterations in the original) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)). To establish an injury in fact for purposes of Takings Clause and procedural due process claims, plaintiffs must "show that they had an identifiable personal stake in the property rights at issue." Bingham v. Mass., 616 F.3d 1, 7 (1st Cir. 2010); see also Asociación de Subscripción Conjunta del Seguro de Responsabilidad Obligatorio v. Flores Galarza, 484 F.3d 1, 27 (1st Cir. 2007) (holding plaintiff must identify valid property interest to bring takings claim); Aponte v. Calderón, 284 F.3d 184, 191 (1st Cir. 2002) (same regarding procedural due process); cf. Roedler v. U.S. Dep't of Energy, No. CIV.98-1843(DWF/AJB), 1999 WL 1627346, at *10 (D. Minn. Dec. 23, 1999) ("To establish

standing pursuant to a taking claim, the plaintiff must show proof of personal injury, that is, the requisite interest in the property at issue and the deprivation thereof by the United States." (citing Maniere v. United States, 31 Fed. Cl. 410, 420 (1994))), aff'd sub nom. Roedler v. Dep't of Energy, 255 F.3d 1347 (Fed. Cir. 2001).

Here, Plaintiffs-Appellants fail to establish a valid protected interest in either electricity consumed by the municipalities or the funds paid to PREPA, as a result of which they do not have standing to bring either the takings or due process claims. See Bingham, 616 F.3d at 7. First, Plaintiffs-Appellants did not establish that they have a property interest in electricity itself, as PREPA Regulations do not create such an interest. P.R. Reg. AEE Reg. 7982. "An interest becomes a protected property interest when recognized by state statute or a legal contract, express or implied, between the state agency and the individual." Marrero-García v. Irizarry, 33 F.3d 117, 121 (1st Cir. 1994). Contracts with state agencies that "include [] a provision that the state entity can terminate the contract only for cause" can create a property interest. Redondo-Borges v. U.S. Dep't of Hous. & Urban Dev., 421 F.3d 1, 10 (1st Cir. 2005) (quoting Linan-Faye Constr. Co. v. Hous. Auth., 49 F.3d 915, 932 (3d Cir. 1995)) (internal quotation marks omitted). And customers of utilities can have a property interest in continued utility

service, in certain circumstances. See Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 9-11 (1978). Accordingly, Puerto Rico law requires public corporations and government entities to "provide [subscribers with] an administrative procedure for the suspension of its services for nonpayment." 27 L.P.R.A. § 262(b). However, in Marrero-García, this Court rejected claimants' assertions that a definition in a public corporation's regulations could create a property interest in the service itself. 33 F.3d at 123 (noting that "relevant case-law . . . suggests that . . . regulatory definitions cannot establish a constitutional right to receive water services"). Thus, no matter how PREPA Regulations are construed, Plaintiffs-Appellants have at most an interest in continuing to receive electricity, which is not at issue here. See 27 L.P.R.A. § 262(b); Memphis Light, 436 U.S. at 9-11; Redondo-Borges, 421 F.3d at 10.

We note that, even assuming, arguendo, that Plaintiffs-Appellants did prove electricity is a moveable good in which they could assert a valid property interest in this context on the basis of P.R. Reg. AEE Reg. 7982 and 31 L.P.R.A § 1061, no one is "taking" electricity from consumers and redirecting it to municipalities, nor does Santiago or any other putative class member actually receive "eleven percent less electricity than he pays for." (Nor do putative class members claim that, for example, they pay for

100 kwh but only receive 89 kwh.) PREPA consumers pay a basic rate for the electricity that they receive, plus an additional fee; municipalities consume electricity, then receive a subsidy from PREPA's overall revenue for their energy consumption; consumers pay only for what they receive and there is no redirection of any electricity. There is no unaccounted-for electricity that Santiago and other putative class members paid for and did not receive -- no wire snaking from an outlet in Santiago's home to the municipal bus stop -- thus no electricity in which to assert a valid property interest nor a taking of said interest.

Finally, Plaintiffs-Appellants cannot assert a valid property interest in funds paid for electricity. Customers lose their interest in money paid to utilities companies for their service. See Koontz v. St. Johns River Water Mgmt. Dist., 133 S. Ct. 2586, 2600 (2013) (fees do not implicate the Takings Clause); Bd. Pub. Util. Comm'rs v. N.Y. Tel. Co., 271 U.S. 23, 31 (1926) ("[R]evenue paid by [utility] customers for service belongs to the company."). Once Santiago and members of the putative class paid for electricity -- the funds are paid, not "taken" -- ownership of those funds transfers to PREPA.

## IV.  Conclusion

Because Plaintiffs-Appellants did not identify a valid property interest, they do not have standing to bring the takings and due process claims.  Thus, we affirm the district court's grant of summary judgment on standing grounds.  Cf. Lujan, 504 U.S. 555.

**AFFIRMED**.

**"Concurring opinion follows"**

-9-

**HOWARD, Chief Judge (concurring in the judgment).** I agree that plaintiffs have not established that they have a protected property interest, and so we must affirm. But I would characterize this defect as going to the merits, not to standing. In addition, I would not decide whether PREPA's regulations give plaintiffs a property interest in electricity.

**I.**

"Standing under Article III of the Constitution requires that an injury be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 149 (2010). To establish standing for their takings claims, plaintiffs allege economic injury: they pay higher electricity bills. And to establish standing for their due process claims, they allege that PREPA has afforded them inadequate process, "the disregard of which could impair a separate concrete interest of theirs" in paying lower rates. Lujan v. Defs. of Wildlife, 504 U.S. 555, 572 (1992). These two harms are fairly traceable to (and indeed directly caused by) PREPA's allegedly unlawful rates and procedures, respectively. And the harms are likely redressable by an award of money damages. Therefore, I think that plaintiffs have standing to bring this action.

-10-

Certainly, the takings and due process clauses both require a plaintiff to show a protected property interest. It seems to me, however, that requirement goes to the merits of the claims. See, e.g., Town of Castle Rock v. Gonzales, 545 U.S. 748, 768 (2005); Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 672 (1999); Bowen v. Gilliard, 483 U.S. 587, 604-5 (1987); Dames & Moore v. Regan, 453 U.S. 654, 674 n.6 (1981). But Article III standing "in no way depends on the merits of the claim." Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n, 135 S. Ct. 2652, 2663 (2015) (internal quotation marks omitted). Nor does Article III independently require a plaintiff to establish a protected property interest. See Ass'n of Data Processing Serv. Orgs., Inc. v. Camp, 397 U.S. 150, 153 (1970). For example, a plaintiff may have standing to vindicate economic harms without showing a protected property interest at all. See, e.g., Clinton v. City of New York, 524 U.S. 417, 432-33 (1998); Bennett v. Spear, 520 U.S. 154, 167-68 (1997); Data Processing, 397 U.S. at 152. And even where, as here, a protected property interest is an element of the cause of action, standing exists so long as "accepting [plaintiff's] version of [state] law as true," the plaintiff "has been deprived of property." Stop the Beach Renourishment, Inc. v. Florida Dep't of Envtl. Prot., 560 U.S. 702, 729 n.10 (2010).

-11-

This distinction between standing and merits may appear to be a quibble in this case, but it is fundamental to Article III and the judicial role. Where jurisdiction otherwise exists, Article III imposes upon a federal court the obligation to exercise it; thus, a court generally may not resolve a weak merits claim on jurisdictional grounds. See Mata v. Lynch, 135 S. Ct. 2150, 2156 (2015). The risk in treating merits issues as questions of standing is that this empowers a court to decide the merits first, resolving them even absent Article III authority to do so, see Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998), and to sua sponte raise the issues at any stage of the litigation since standing cannot be waived, see Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986).

It is possible that standing and merits blend together in the takings and procedural due process contexts, but the First Circuit cases cited in support of that suggestion don't really say so. See supra at 5-6. Two of the cases decided the property interest issue on the merits, not on standing grounds. See Asociación de Subscripción Conjunta del Seguro de Responsabilidad Obligatorio v. Flores Galarza, 484 F.3d 1, 27 (1st Cir. 2007); Aponte v. Calderón, 284 F.3d 184, 191 (1st Cir. 2002). And the other case, Bingham v. Massachusetts, 616 F.3d 1 (1st Cir. 2010), denied standing not for lack of a protected property interest, but

-12-

because the plaintiffs lacked a "personal stake" in the alleged property interest. Id. at 7. The question of a personal stake -- whether a plaintiff is seeking to vindicate her personal rights as opposed to those of third parties or the public -- is a genuine standing issue. See Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377, 1387 n.3 (2014). But that is not the question here. In this case, plaintiffs have demonstrated a personal stake, for they seek to vindicate their own interests in electricity they paid for and fees they paid, not in anyone else's electricity or fees. Rather, the question here is whether electricity and fees are protected property interests. These are merits questions.

## II.

On the merits, I would affirm the judgment for lack of a protected property interest. I agree that plaintiffs had no property interest in their voluntarily paid electricity fees, which is fatal to their fees-based claims. In addition, I would hold plaintiffs to their conceded lack of a property interest in purchasing electricity at a lower rate; this concession is fatal to their electricity-based claims. I also agree, for the reasons that my colleagues state, that, even assuming that plaintiffs had a property interest in electricity, PREPA did not take it.

Because these holdings suffice to affirm the judgment, I would not decide whether PREPA's regulations confer a property interest in electricity upon plaintiffs. Our decision in Marrero-García v. Irizarry, 33 F.3d 117 (1st Cir. 1994), said to establish that the regulations do not confer a property interest, dealt with different regulatory language. That case held that a utility regulation, defining the utility's "users" as persons who enjoy the utility's services, did not confer a property interest in continued service. See id. at 123. Unlike in Marrero-García, the regulation here does not define who the users of PREPA's electricity services are. Instead it defines electricity as movable property that can be unlawfully appropriated. See P.R. Reg. AEE Reg. 7982; see also 33 L.P.R.A. § 4642(g) (for purposes of the Penal Code, defining "personal property" as including "electric power"). This suggests the possibility that plaintiffs may have a property interest in using their purchased electricity, against PREPA's allegedly unlawful redirection of that electricity to other customers.

Nonetheless, we need not resolve this question because, as discussed above, we can affirm on other grounds.


**"Concurring opinion follows"**


-14-

**LYNCH**, <u>**Circuit Judge**</u>, **(concurring).** All three judges agree that the plaintiffs have not established a constitutionally protected property interest, and that we should affirm the district court's grant of summary judgment.

All three judges also agree that the question of standing has both a constitutional Article III component and a prudential component, and that we may address the two components in any order. <u>See</u> <u>Sinochem Int'l Co.</u> v. <u>Malaysia Int'l Shipping Corp.</u>, 549 U.S. 422, 431 (2007).

My two colleagues have different views as to whether the plaintiffs' payment of electric bills claimed to be inflated is an injury sufficient to give them standing. The parties have not briefed questions of standing, and the issues are in my view quite difficult.

So, for the sake of resolving this case, I join Judge Torruella's opinion without any intimation that I necessarily disagree with Judge Howard's analysis.